# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Louis Iudiciani, on behalf of himself and all others similarly situated, | |
| Plaintiff, | |
| v. | CASE NO. 1:23-cv-00443-MSM-LDA |
| The Seyboth Team Real Estate Inc. d/b/a Century 21 Limitless, | |
| Defendant. | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT, THE SEYBOTH TEAM REAL ESTATE INC.'S MOTION TO DISMISS

## TABLE OF CONTENTS

Introduction ........................................................................................................................ 1

Statement of Facts ............................................................................................................. 2

Procedural Standard .......................................................................................................... 2

Argument ........................................................................................................................... 3

   I.   Plaintiff sufficiently alleges that Defendant violated 47 U.S.C. § 227(c)(5), by way of
violations of 47 C.F.R. § 64.1200(d)(4) and 64.1200(c). ................................................ 3

     A.   The FCC already opined that Defendant's precise conduct is a violation of its
telemarketing regulation. ........................................................................................... 3

     B.   Defendant confuses Plaintiff's pleading requirements, and cases interpreting the scope
of TCPA damages on a per-call basis, with its own potential affirmative defenses. .............. 4

       1.   Plaintiff is not required to address Defendant's potential affirmative defenses through
his initial pleading. ..................................................................................................... 4

       2.   Defendant misapplies caselaw discussing the damages scheme for violations of §
227(c)(5) as a basis for dismissing Plaintiff's complaint ............................................ 7

   II.   Plaintiff sufficiently alleges that Defendant delivered its telemarketing messages to a
residential telephone number. ........................................................................................ 12

     A.   The FCC already opined that cellular telephone numbers registered on the DNC
Registry are presumed to be residential telephone numbers. ................................. 12

     B.   Caselaw makes abundantly clear that a plaintiff sufficiently states a claim under the
TCPA if a defendant delivers telemarketing text messages to their cellular telephone number
if that number is registered on the DNC Registry. .............................................................. 14

     C.   Defendant's cited authority is easily distinguishable and of limited relevance. ............ 16

   III.   If this Court finds any of Plaintiff's allegations lacking, it should allow leave to
amend. ............................................................................................................................. 21

Conclusion ....................................................................................................................... 21

**Introduction**

Louis Iudiciani ("Plaintiff") alleges that The Seyboth Team Real Estate Inc. d/b/a Century 21 Limitless ("Defendant") started delivering numerous text messages to his cellular telephone number—which he uses as his personal residential telephone number, and which he registered on the National Do-Not-Call Registry ("DNC Registry")—for the purposes of telemarketing or solicitation, absent his prior express written consent, and without properly disclosing required information when sending such telemarketing messages. Plaintiff contends that Defendant's conduct violates the Telephone Consumer Protection Act ("TCPA"), and so he brought this action on behalf of himself and proposes classes of similarly situated consumers.

Defendant now seeks to dismiss Plaintiff's complaint based on (1) a profound misunderstanding of the TCPA's regulatory scheme as it applies to the DNC Registry; and (2) a self-serving argument that Plaintiff must prove through his complaint—to Defendant's satisfaction, and not based on any objective standard—that Plaintiff's personal cellular telephone number is not used as a business number, despite Plaintiff stating as much, the FCC presuming as much, and Defendant's conduct supporting Plaintiff's allegations. Specifically, Defendant repeatedly delivered text messages to Plaintiff's cellular telephone number *for the purpose of representing him in a potential purchase or sale of his residence*, so the present allegations suggest that even Defendant believed that it was contacting Plaintiff at his residential telephone number. Yet Defendant now contends that Plaintiff must plead even more to survive dismissal, basing its argument almost entirely on a summary judgment decision that went in that plaintiff's favor on the issue. Regardless, an overwhelming weight of authority rejects each of Defendant's arguments, and thus the Court should join them by denying Defendant's motion to dismiss.

## Statement of Facts

Plaintiff is, and has been at all times relevant to this action, the regular and sole user of his cellular telephone number, which he uses as his personal residential telephone number. ECF No. 1 at ¶¶ 9-10. Plaintiff's telephone number is, and has been at all relevant times, registered to the DNC Registry, since he registered it in November 2004. *Id.* at ¶ 13.

Beginning in 2022, Plaintiff received a series of text messages from a series of rotating telephone numbers from "Century 21 Limitless PRG" or "Century 21" offering real estate evaluations and inquiring as to whether Plaintiff wanted to sell his home or purchase another home. *Id.* at ¶ 14. However, Plaintiff did not recognize the sender, did not request any real estate representation, and had zero interest—then or at any point in many years—to sell his home, or use any of Defendant's services. *Id.* at ¶¶ 15-18, 21.

In response to this series of text messages, Plaintiff filed this lawsuit. Plaintiff alleges that Defendant violated the TCPA in two separate ways: (1) delivering solicitation text messages to his residential telephone number, absent his prior express written consent; and (2) delivering telemarketing text messages to her telephone number while failing to disclose required information. *Id.* at ¶¶ 64-80.

## Procedural Standard

In evaluating a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[1] A complaint need not provide "detailed factual allegations," but it must provide factual allegations sufficient to set forth an entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As this Court explained

---

[1]    Unless otherwise indicated, all internal citations are omitted and all emphasis is added.

in *Inmusic Brands, Inc. v. Roland Corp.*:

> In undertaking its assessment of the pleading, a court may not "attempt to forecast a . . . likelihood of success on the merits." Instead, as the First Circuit has emphasized, "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief."

No. 1:17-cv-00010-MSM-LDA, 2021 U.S. Dist. LEXIS 258733, at *8 (D.R.I. Aug. 16, 2021)

(McElroy, J.).

Notably, "because the TCPA is a consumer protection statute, we must interpret it broadly in favor of consumers." *Breda v. Cellco P'ship*, 934 F.3d 1, 10 (1st Cir. 2019).

## Argument

**I.    Plaintiff sufficiently alleges that Defendant violated 47 U.S.C. § 227(c)(5), by way of violations of 47 C.F.R. § 64.1200(d)(4) and 64.1200(c).**

### A.    The FCC already opined that Defendant's precise conduct is a violation of its telemarketing regulation.

As a starting point, the FCC's guidance on this matter resoundingly demonstrates that real estate solicitations such as Defendant's communications here qualify as prohibited solicitations, in violation of the TCPA, when delivered without adhering to the DNC Registry's requirements. In 2005, the National Association of Realtors petitioned the FCC for an exemption from the DNC Registry's definition of "solicitation" for calls made by real estate agents to property owners with lapsed real estate listings where the real estate agent solicits their services to a prospective seller. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788 (2005). In interpreting the definition of "telephone solicitation," the FCC rejected this exemption, and concluded "that a telephone solicitation would include calls by real estate agents to property owners for the purpose of offering their services to the owner, whether the property listing has lapsed or not." *Id.* at 3793-94. The FCC further confirmed that, "[a]s with any entity making calls that constitute 'telephone solicitations,' a real estate agent, insurance agent, or

newspaper is precluded from calling consumers registered on the national do-not-call list, unless the calls would fall within one of the specific exemptions provided in the statute and rules." *Id.*

Despite being directly applicable to this matter, Defendant omits any reference to this in its motion.

> **B.    Defendant confuses Plaintiff's pleading requirements, and cases interpreting the scope of TCPA damages on a per-call basis, with its own potential affirmative defenses.**
>
> > **1.    Plaintiff is not required to address Defendant's potential affirmative defenses through his initial pleading.**

Against that backdrop, Defendant's first argument in support of its motion to dismiss rests on a profound misunderstanding of the TCPA's statutory scheme.

First, Defendant seeks dismissal of both of Plaintiff's claims based on a supposed failure to allege that Defendant implemented standards and procedures to avoid violations of the TCPA's implementing regulations. *See* ECF No. 6-1 at 6. However, this broad-brush approach to Plaintiff's allegations conflates two different sets of standards and applicable regulations. Specifically, Plaintiff alleges that Defendant violated 47 U.S.C. § 227(c)(5) by way of its violations of: (1) 47 C.F.R. § 64.1200(c)(2), by delivering more than one telemarketing message to Plaintiff's cellular (and residential) telephone number; and (2) 47 C.F.R. § 64.1200(d)(4), by delivering those telemarketing messages without providing required disclosures in those messages. *See* ECF No. 1 at ¶¶ 2-3, 64-80. Defendant contends that both of these claims require allegations that it "failed to implement the proper standards and procedures required by the regulations – not that [it] called someone who had requested to be on a do not call list." ECF No. 6-1 at 6. This is completely incorrect, because, for claims arising under violations of § 64.1200(c)(2)—which Plaintiff alleges in his DNC Registry claim, *see* ECF No. 1 at ¶¶ 2, 64-65, 69—Defendant's argument is actually a fact-intensive affirmative defense, not a pleading requirement for Plaintiff.

As the court explained in *Benzion v. Vivint, Inc.*, while rejecting a materially identical argument:

> Defendant argues in its Motion to Dismiss that Plaintiff's claim under § 64.1200(c)(2) is deficient because Plaintiff does not allege that Defendant failed to meet the standards prescribed under subsection (c)(2)(i). Defendant misreads the plain language of the regulation to require Plaintiff to plead that which is an affirmative defense. The regulation first creates a cause of action against a person or entity that initiates telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the DNC List. The regulation only then goes on to permit a defendant to "demonstrate" that the violation is the result of error and that the defendant meets certain standards—creating a clear affirmative defense. This plain reading is supported by the nature of the following subsection, (c)(2)(ii), which permits a defendant to show it has obtained the subscriber's express consent to receive a call—a recognized affirmative defense. Therefore, the undersigned finds that Plaintiff sufficiently pleaded a claim under 47 C.F.R. 64.1200(c)(2), and RECOMMENDS that Defendant's Motion to Dismiss should be DENIED as it pertains to Count III of the Second Amended Complaint.

No. 12-61826-CIV, 2014 U.S. Dist. LEXIS 187275, at *19-20 (S.D. Fla. Jan. 17, 2014).

Other courts resoundingly agree. *See, e.g.*, *Fralish v. Dig. Media Sols.*, No. 3:21-CV-00045-JD-MGG, 2021 U.S. Dist. LEXIS 225281, at *16 (N.D. Ind. Nov. 17, 2021) ("the TCPA *affirmative defense* is only available if 'the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under [subsection (c)].' Establishing *this affirmative defense* involves an evaluation of any practice Digital employed to send text messages themselves or to direct others to send text messages."); *Fralish v. Deliver Tech., LLC*, No. 3:20-CV-00353-DRL-MGG, 2021 U.S. Dist. LEXIS 143822, at *16 (N.D. Ind. Aug. 2, 2021) (same); *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 129 (D. Conn. 2016) ("The statute also provides an affirmative defense if a defendant can prove that it has 'established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection.'").

As the court in *Simmons* further explained:

> Though subsections (c) and (d) are similar, it is important to note their distinctions. Subsection (c) is a direct prohibition on making calls to a particular subset of individuals (those on the national DNC registry). A telemarketer violates that regulation by placing a call to a person whose number is on the registry. The telemarketer may be saved from liability, however, if it establishes that it complied with the regulatory safe harbor provision. *See* 47 C.F.R. § 64.1200(c)(2)(i). *Accordingly, the assertion of non-liability based on compliance with the safe harbor provisions may be properly classified as an affirmative defense.*

*Id.* at 131.

As a result, the plain language of the TCPA and its implementing regulations, FCC guidance, and applicable caselaw all uniformly dictate that an implementation of applicable DNC Registry policies and procedures is an affirmative defense that Defendant must advance through its answer, and prove over the course of discovery. And it is black letter law that Plaintiff is not required to anticipate Defendant's affirmative defenses and plead around those potential defenses through his complaint. *See Nat'l Ass'n of the Deaf v. Harvard Univ.*, 377 F. Supp. 3d 49, 68 (D. Mass. 2019) ("A plaintiff is 'not required to anticipate and plead around affirmative defenses raised by [a defendant].'"); *Dennett v. Archuleta*, 982 F. Supp. 2d 166, 169 (D.R.I. 2013) (same, citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Thus, to the extent that Defendant contends that Plaintiff's first cause of action—involving Defendant's delivery of telemarketing text messages to his residential telephone number and those of the putative class absent prior express written consent—should be dismissed because "Plaintiff must allege that STRE failed to implement the proper standards and procedures required by the regulations," it is flatly mistaken, and the Court should deny Defendant's motion on that basis. ECF No. 6-1 at 6.

**2.    Defendant misapplies caselaw discussing the damages scheme for violations of § 227(c)(5) as a basis for dismissing Plaintiff's complaint.**

Notwithstanding that fatal defect in Defendant's argument as to Plaintiff's telemarketing claim, to the extent that Defendant argues that Plaintiff fails to allege a violation of the sender identification regulations—his second cause of action—Defendant's arguments similarly fail, and are wholly unsupported by its cited caselaw.

To support its arguments, Defendant cites to a series of decisions discussing how violations of § 227(c)(5) are not applied on a per-violation basis, and are instead applied on a per-call basis. Specifically, Defendant points to a series of cases noting that violations of § 227(c)(5) of the TCPA are calculated for each call, rather than each violation, such that a Plaintiff can only recover statutory damages once per telephone call (or text message[2]), even if that call violates multiple regulations promulgated under 47 C.F.R. § 64.1200. In other words, if a single text message Defendant delivers violates both 47 C.F.R. § 64.1200(c)(2) *and* 47 C.F.R. § 64.1200(d)(4)—as Plaintiff alleges here—Plaintiff is entitled to only one set of statutory damages pursuant to § 227(c)(5) for that specific call, rather than two. *See, e.g., Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 632 (6th Cir. 2009) (noting that "the district court did not err in holding that Charvat cannot collect statutory damages on a per-violation basis under the TCPA" as opposed to a "per-call" basis).

By way of contrast, for claims brought pursuant to 47 U.S.C. § 227(b), multiple violations of § 227(b) can trigger multiple statutory damages awards for a single call, such as instances where the caller uses *both* an artificial or prerecorded voice *and* an automatic telephone dialing system.

---

[2]    To be sure, a "text message" is a "call" for the purposes of the TCPA. *See, e.g., Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 198 (D. Mass. 2021) (discussing Supreme Court and FCC guidance on the issue).

*See, e.g.*, *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1105 (11th Cir. 2015) ("In plain terms, the statute allows a person to recover '$500 in damages for each' 'violation of this subsection.' Section 227(b)(1) has no language limiting the recovery to $500 per 'call' or 'fax.'"); *Mey v. Phillips*, 71 F.4th 203, 225 (4th Cir. 2023) (same, citing *Lary*); *Burns v. Halsted Fin. Servs., LLC*, No. 1:15-cv-4287-LMM-JKL, 2016 U.S. Dist. LEXIS 139440, at *14 (N.D. Ga. Sep. 13, 2016) ("Although Plaintiff complains that he received two telephone calls from Defendant, he has identified four distinct violations of the TCPA—two for each call.").

Given as much, Defendant offers little connecting its caselaw discussing the amount of damages available per-call under § 227(c)(5) with its argument that the Court should dismiss Plaintiff's claims arising from its violations of 47 C.F.R. § 64.1200(d)(4). Plaintiff alleges that Defendant was required to provide "the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *Id.*; *see also* ECF No. 1 at ¶¶ 3, 72-80. And it is plainly apparent, given the communications Plaintiff attached to his complaint, that Defendant failed to provide required telemarketing disclosures in its communications to Plaintiff. Specifically, Defendant never provided a telephone number or address at which it can be contacted, at best using varied fictitious or trade names rather than the name of Defendant in its communications. *See id.* at ¶ 14. And, to the extent it was the entity responsible for delivering the other text messages identified in Plaintiff's complaint, Defendant was even less compliant, by providing *none* of the required information. *See id.* at ¶ 21. Defendant committed those failures every single time it delivered a text message to Plaintiff's residential telephone number. *See generally id.* Thus, Plaintiff properly alleged that Defendant placed telemarketing calls or

delivered text messages to himself and other similarly situated consumers without providing those required disclosures, and that it did so as a matter of course. *See id.* at ¶¶ 43, 54, 72-80.

Courts routinely find that materially identical allegations are sufficient to state a claim under the TCPA. *See, e.g.*, *Champion v. Sethi*, No. CV-22-01355-PHX-DGC, 2023 U.S. Dist. LEXIS 55352, at *13 (D. Ariz. Mar. 30, 2023) ("Plaintiffs allege that not a single telemarketing text message they received from Defendants disclosed the name of the individual caller or the name of the entity on whose behalf the text message had been sent. Plaintiffs state a plausible violation of § 64.1200(d)(4)") (collecting cases); *Hossfeld v. DIRECTV, LLC*, No. 2:22-cv-05339-JLS-MAA, 2023 U.S. Dist. LEXIS 58458, at *12 (C.D. Cal. Mar. 31, 2023) (same); *Eagle v. GVG Capital, LLC*, No. 22-cv-00638-SRB, 2023 U.S. Dist. LEXIS 15834, at *13 (W.D. Mo. Jan. 31, 2023) (same, involving materially identical allegations brought by undersigned counsel); *Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1185 (D. Utah 2021) (denying motion to dismiss, and finding that telemarketing text messages that "failed to provide the 'legal name of the business,' . . . ostensibly violated the regulation."); *Hand v. Beach Entm't Kc*, 456 F. Supp. 3d 1099, 1125 (W.D. Mo. 2020) (denying defendants' motion for summary judgment based on arguments that "(1) § 64.1200(d) does not apply to receipt of text messages on a cell phone but rather solely applies to calls made to a 'residential telephone subscriber;' (2) Hand lacks a private right of action to redress violations of 47 C.F.R. § 64.1200(d).").

Defendant addresses none of this authority through their motion to dismiss. Instead, Defendant suggests a strained theory that Plaintiff must somehow know the inner workings of Defendant's telemarketing operations and provide specific allegations that Defendant either lacked telemarketing policies or disregarded them when it delivered the violative messages to Plaintiff's residential telephone number. *See generally* ECF No. 6-1 at 4-6. However, Defendant imposes a

9

heightened pleading standard on Plaintiff where none is required: Plaintiff need not allege the inner workings of Defendant's operation; rather, Plaintiff must advance allegations that, if true, allow for the "plausible infer[ence] that Defendant violated the TCPA and its implementing regulations." *Visco v. Creditors Relief, LLC*, No. 20-cv-12303-DJC, 2022 U.S. Dist. LEXIS 28908, at *12 (D. Mass. Feb. 17, 2022); *see also Laccinole v. Students For Life Action Inc.*, No. 21-252 WES, 2022 U.S. Dist. LEXIS 139369, at *9 (D.R.I. Aug. 4, 2022) (same, noting that "TCPA claims 'do not require the usual level of particularity,'" because it is very difficult for a plaintiff to know a defendant's inner workings absent discovery).

Demanding more—such as Defendant's suggestion that Plaintiff must identify specific policies and procedures it failed to implement—would unrealistically elevate Plaintiff's pleading standard to require him to know Defendant's inner working before filing a complaint based on an evident failure to comply with the TCPA's implementing regulations. As the court explained in *Hatteberg v. Capital One Bank, N.A.*:

> This argument threatens to turn *Twombly* and *Iqbal* into a one-way ratchet, requiring plaintiffs to plead ever more specific and detailed factual allegations whenever a cause of action includes at least one matter of fact as an element. And in cases like the one at hand—in which Plaintiff, without discovery, has no meaningful access to Defendant's inner workings and operations, and thus only a limited ability to assert specific facts about Defendant's conduct—this heightened pleading standard could well render insurmountable the information asymmetries faced by plaintiffs, thereby closing the federal courts to potentially meritorious claims with an impossibly demanding pleading standard.

No. SA CV 19-1425-DOC-KES, 2019 U.S. Dist. LEXIS 231235, at *9 (C.D. Cal. Nov. 20, 2019).

On the other hand, if Defendant is instead arguing that Plaintiff need not plead with such specificity, but instead must use certain "magic words" to adequately allege that Defendant violated 47 C.F.R. § 64.1200(d), such an argument would elevate form over substance and merely mandate that Plaintiff add entirely conclusory language to his complaint—a requirement other

courts resoundingly reject. *See, e.g.*, *Vance v. Bureau of Collection Recovery LLC*, No. 10-cv-06324, 2011 U.S. Dist. LEXIS 24908, at *6 (N.D. Ill. Mar. 11, 2011) (noting that a plaintiff "does not fail to state a claim merely because it uses terminology that differs slightly from the terminology of the statute" and does not need to use "magic words" to track statutory language, and that the plaintiff need only allege facts sufficient to support a "reasonable inference" the defendant violated the TCPA). Because Defendant *never* delivered text messages with compliant required disclosures, Plaintiff's allegations support a reasonable inference that Defendant lacked appropriate practices and procedures to provide those disclosures in each communication with a consumer. Nothing more is required of him at this juncture.

Given as much, the authority Defendant cites either does not support its argument, or Defendant's arguments based upon them are strained beyond credulity. In *Charvat v. DFS Servs. LLC*, the court dismissed claims that were deemed redundant because the plaintiff brought claims alleging *both* violations of 47 C.F.R. § 64.1200(d), generally, and subsections of § 64.1200(d), specifically. 781 F. Supp. 2d 588, 592 (S.D. Ohio 2011). Thus, because a plaintiff could only recover once for each call delivered in violation of § 64.1200(d), the court agreed that the additional causes of action were "redundant" to the overarching one, and dismissed them on that basis. *Id.* at 591-92. Defendant's description of that outcome—stating that "the court dismissed two counts of plaintiff's complaint for failure to state a claim", ECF No. 6-1 at 5—and application of it to this case, are thus incorrect, because Plaintiff brings one claim for violations of § 64.1200(c), and a separate claim for violations of § 64.1200(d)(4), rather than two claims under § 64.1200(d), with one subsumed by the other. *See* ECF No. 1 at ¶¶ 2-3.

Relatedly, Defendant's citation to *Charvat v. GVN Michigan, Inc.* is similarly inapposite, as that case was dismissed for amount-in-controversy grounds for the damages-related issues

discussed *supra*, and not on the merits as Defendant seeks here. 561 F.3d 623 (6th Cir. 2009); *see also Charvat v. NMP, Ltd. Liab. Co.*, 656 F.3d 440, 455 (6th Cir. 2011) (same); *accord Hamilton v. Voxeo Corp.*, No. 3:07-cv-404, 2009 U.S. Dist. LEXIS 53619 (S.D. Ohio June 25, 2009) (addressing, on summary judgment, the *amount* of damages available to a TCPA claimant).

Thus, for all of these reasons, Defendant fails to establish that Plaintiff's allegations, accepted as true, do not state a claim for violations of the TCPA and its implementing regulations. Rather, Defendant only addresses aspects of the statutory damages scheme limiting Plaintiff to a single claim for statutory damages for each call or text message Defendant delivered, and then asks the Court to figure out for itself why that "single recovery per communication" issue merits dismissal of Plaintiff's substantive claims. Instead, the Court should deny Defendant's motion, and join *Eagle*, *Champion*, *Robison*, *Hand*, and *Hossfeld* in finding that Plaintiff's allegations state a claim under the TCPA.

## II.    Plaintiff sufficiently alleges that Defendant delivered its telemarketing messages to a residential telephone number.

Next, Defendant suggests that the Court should dismiss Plaintiff's claims for failure to meet some as-yet-undefined standard to *prove*, in his initial pleading that, Plaintiff uses his cellular telephone number as one of his residential telephone numbers. Neither party disputes that Plaintiff alleges as much, but Defendant contends that Plaintiff must allege *more*. *See* ECF No. 6-1 at 7 (acknowledging that cell phones may be construed as calls to a "residential" telephone number under the TCPA). Defendant is flatly mistaken, as numerous authorities make abundantly clear.

### A.    The FCC already opined that cellular telephone numbers registered on the DNC Registry are presumed to be residential telephone numbers.

First and foremost, the FCC expressly rejects Defendant's argument. In 2003, the FCC concluded that any cell phone registered on the DNC Registry—as Plaintiff alleges here—is

"presumptively a residential phone." *Chennette v. Porch.Com, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022). Specifically, the FCC stated that, for the purpose of interpreting and enforcing the DNC Registry, "we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'" *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 64 (F.C.C. June 26, 2003). Thus, rather than requiring Plaintiff to somehow prove in his complaint—to Defendant's satisfaction—that he used his cellular telephone number as a residential phone number, Defendant must instead overcome the default presumption that it was a residential phone number during the course of discovery. *See Chennette*, 50 F.4th at 1225 ("Defendants may overcome the presumption by showing that plaintiffs use their cell phones to such an extent and in such a manner that the presumption is rebutted. That is, defendants may rebut the presumption and show that the cell phone is a business line."); *Tsolumba v. SelectQuote Ins. Servs.*, No. 5:22-cv-00712, 2023 U.S. Dist. LEXIS 167022, at *14 (N.D. Ohio Sep. 20, 2023) ("the FCC 'has been clear in interpreting 'residential subscriber' to include cell phones' because 'it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections.'") (collecting cases).

And this is true even if a cellular telephone number was used for both residential and business purposes—which Plaintiff does not allege, and Defendant certainly does not suggest through its motion. *See, e.g.*, *Mattson v. New Penn Fin., LLC*, No. 3:18-cv-00990-YY, 2020 U.S. Dist. LEXIS 197955 (D. Or. Oct. 25, 2020) ("Although [plaintiff's] use of a phone line for personal calls does not automatically transform it into a residential line for purposes of the TCPA, neither does his use of a personal line for business calls automatically transform it into a business line."); *Clements v. Porch.com, Inc.*, No. 1:20-cv-00003-SLG, 2020 U.S. Dist. LEXIS 175397 (D. Ala. Sept. 24, 2020) (holding that phones used for home-based businesses fall within the TCPA's zone

of interest); *Smith v. Truman Rd. Dev., LLC*, No. 4:18-cv-00670-NKL, 2020 U.S. Dist. LEXIS 74330, (W.D. Mo. Apr. 28, 2020) (holding that a cell phone used at least 60 percent for personal purposes can be residential); *Blevins v. Premium Merch. Funding One, LLC*, No. 2:18-cv-377, 2018 U.S. Dist. LEXIS 183362 (S.D. Ohio Oct. 25. 2018) ("[C]ourts have routinely looked at the facts and circumstances surrounding a particular case before deciding whether TCPA protection extended to a particular telephone number that was used for both business and residential purposes.").

Thus, given the FCC guidance applicable here—which Defendant again omits—the Court should not indulge Defendant's efforts to flip the burden and require Plaintiff to somehow prove to a nebulous standard that he used his cellular telephone as a residential phone number. Given that he already alleged as much, *see* ECF No. 1 at ¶¶ 9-12, nothing more is required of Plaintiff at this juncture.

**B.    Caselaw makes abundantly clear that a plaintiff sufficiently states a claim under the TCPA if a defendant delivers telemarketing text messages to their cellular telephone number if that number is registered on the DNC Registry.**

In light of the FCC's guidance, and considering the intent and statutory scheme underlying the TCPA, courts in the First Circuit and across the country consistently hold that telemarketing messages delivered without prior express written consent to cellular telephone numbers registered on the DNC Registry state a claim for a violation of the TCPA. *See Bennett v. Sunpath, Ltd.*, No. 21-11519-GAO, 2023 U.S. Dist. LEXIS 47234, at *2 (D. Mass. Mar. 21, 2023) (denying motion to dismiss, noting that "[a]lthough 'only residential phone subscribers are entitled to' protection under the TCPA, cellphones registered on the 'Do Not Call Registry' are presumed to be residential subscribers."); *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 201-02 (D. Mass. 2021) (same); *Klassen v. Solid Quote LLC*, Civil Action No. 23-cv-00318-GPG-NRN, 2023 U.S. Dist.

LEXIS 203237, at *5-6 (D. Colo. Nov. 14, 2023) ("For some twenty years, the FCC has recognized exactly what SolidQuote opposes, i.e., that 'wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones.' It is time to permanently cut the cord on SolidQuote's tired and long-debunked argument."); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 349 (3d Cir. 2017) ("[The TCPA's] expression of particular concern for residential calls does not limit—either expressly or by implication—the statute's application to cell phone calls."); *Tsolumba*, 2023 U.S. Dist. LEXIS 167022, at *14 ("Accordingly, 'the privacy interests they implicate are just as strong as wirelines, perhaps more so.'"); *Tessu v. AdaptHealth, LLC*, Civil Action No. SAG-23-0364, 2023 U.S. Dist. LEXIS 145211, at *13 (D. Md. Aug. 17, 2023) ("This Court therefore joins the majority of courts throughout the country who have held that cell phones like Tessu's are entitled to the TCPA's protection as residential telephones.").[3]

---

[3]     *See also, e.g.*, *Mestas v. CHW Grp. Inc.*, 508 F. Supp. 3d 1011, 1028 (D.N.M. 2020); *Escano v. Rci LLC*, No. CV 22-360 DHU/GJF, 2022 U.S. Dist. LEXIS 213384 (D.N.M. Nov. 28, 2022); *Cunningham v. Technologic USA, Inc.*, No. 19-CV-00231-F, 2020 U.S. Dist. LEXIS 257373 (D. Wyo. June 17, 2020); *Tyner v. Hi.Q, Inc.*, No. CIV-21-608-F, 2022 U.S. Dist. LEXIS 220099 (W.D. Okla. Dec. 7, 2022); *Braver v. NorthStar Alarm Servs., LLC*, No. CIV-17-0383-F, 2019 U.S. Dist. LEXIS 118080 (W.D. Okla. July 16, 2019); *Atkinson v. Choice Home Warranty*, No. CV 22-04464, 2023 U.S. Dist. LEXIS 5570 (D.N.J. Jan. 11, 2023); *Champion v. Credit Pros Int'l Corp.*, No. 21-10814 (JXN) (JBC), 2023 U.S. Dist. LEXIS 84427 (D.N.J. May 15, 2023); *Blalack v. Rentbeforeowning.Com*, No. CV21-09048-JAK, 2022 U.S. Dist. LEXIS 188649 (C.D. Cal. Oct. 11, 2022); *Ewing v. CSolar*, No. 22-CV-0720-WQH, 2022 U.S. Dist. LEXIS 172592 (S.D. Cal. Sept. 22, 2022); *Noviello v. Holloway Funding Grp.*, No. 3:22-CV-52-BN, 2023 U.S. Dist. LEXIS 3060 (N.D. Tex. Jan. 9, 2023); *Spurlark v. Dimension Serv. Corp.*, No. 2:21-CV-3803, 2022 U.S. Dist. LEXIS 120468 (S.D. Ohio July 7, 2022); *Gill v. Align Tech. Inc.*, No. 21-CV-631-JPS-JPS, 2022 U.S. Dist. LEXIS 87464 (E.D. Wis. May 16, 2022); *Miholich v. Senior Life Ins. Co.*, No. 21-CV-1123-WQH-AGS, 2022 U.S. Dist. LEXIS 86543 (S.D. Cal. May 12, 2022); *Rose v. New Tsi Holdings, Inc.*, No. 21-CV-5519 (JPO), 2022 U.S. Dist. LEXIS 56525 (S.D.N.Y. Mar. 28, 2022); *Strange v. ABC Co.*, No. CV 19-1361, 2021 U.S. Dist. LEXIS 38882 (W.D. La. Mar. 1, 2021); *Valdes v. Century 21 Real Est., LLC*, No. CV 2:19-05411, 2019 U.S. Dist. LEXIS 182616 (D.N.J. Oct. 22, 2019); *Hodgin v. Parker Waichman LLP*, No. 3:14-CV-733-DJH, 2015 U.S. Dist. LEXIS 192262 (W.D. Ky. Sept. 30, 2015); *Clemons v. Bradford O'Neil Agency, LLC*, No. 4:21-CV-00678-SRC, 2021 U.S. Dist. LEXIS 244116 (E.D. Mo. Dec. 22, 2021).

Thus, to the extent that Defendant suggests that Plaintiff and the putative class members cannot *ever* bring claims for violations of 47 U.S.C. § 227(c)(5) premised on violations of 47 C.F.R. § 64.1200, such a position is rejected by numerous courts around the country, along with the FCC itself.

### C.     Defendant's cited authority is easily distinguishable and of limited relevance.

Despite the unambiguous and overwhelming authority that cellular telephone numbers may be considered residential telephone numbers for purposes of DNC Registry claims brought pursuant to 47 U.S.C. § 227(c)(5), Defendant nevertheless suggests that Plaintiff's claims should be dismissed for failure to more-thoroughly detail that he used his cellular telephone number as one of his residential telephone numbers. In doing so, Defendant relies on a series of cases that either involve entirely different TCPA claims, or entirely different allegations. Defendant also blurs summary judgment rulings following the completion of discovery with motions to dismiss, all in an apparent effort to obfuscate applicable law and suggest that Plaintiff must somehow prove in his complaint, to an as-yet undetermined standard, that his cellular telephone number was used as a residential telephone number. However, a closer examination of Defendant's cited authority makes clear that the authority, and Defendant's arguments derived from it, do not support dismissal of Plaintiff's claims.

Notably, in nearly every case Defendant cites, the plaintiff entirely failed to allege that they used their cellular telephone number as a residential number. *See Smith v. Vision Solar LLC*, No. 20-2185, 2020 U.S. Dist. LEXIS 172224, at *8 (E.D. Pa. Sep. 21, 2020) ("As a preliminary issue, Vision Solar notes that Plaintiffs never pleaded that Smith's cell phone line in question is his residential phone, as required for a claim under § 227(c)."); *Cunningham v. Politi*, No. 4:18-CV-00362-ALM-CAN, 2019 U.S. Dist. LEXIS 102447, at *11 (E.D. Tex. Apr. 30, 2019) (dismissing

claims because the plaintiff did not allege his cellular telephone number was used as a residential telephone number); *Cunningham v. Rapid Capital Funding, LLC/RCF*, No. 3:16-cv-02629, 2017 U.S. Dist. LEXIS 136951, at *8 (M.D. Tenn. July 27, 2017) (same); *Hicks v. Alarm.com Inc.*, Civil Action No. 1:20-cv-532, 2020 U.S. Dist. LEXIS 157433, at *12 (E.D. Va. Aug. 6, 2020) (same, noting that the omission is "[p]erhaps easily addressed by amendment."). Meanwhile, *in Gloria Sun Jung v. Bank of Am., N.A.*, the *pro se* plaintiff failed to allege that she even registered her telephone number on the DNC Registry, which is a necessary prerequisite to any DNC Registry claims brought under § 227(c)(5). No. 3:16-CV-00704, 2016 U.S. Dist. LEXIS 102247, at *27 (M.D. Pa. Aug. 2, 2016).

Here, on the other hand, no party disputes that Plaintiff alleges that he uses his cellular telephone number as a residential telephone number, and that he registered his cellular telephone number on the DNC Registry, so that the FCC presumes that the cellular telephone number is a residential telephone number. Thus, the series of cases where the plaintiff entirely failed to allege that is of no relevance here.

In *Morgan v. U.S. Xpress, Inc.*, however, the court dealt with an entirely different subsection of the TCPA, which also involves different definitions which are not at issue here. No. 3:17-cv-00085, 2018 U.S. Dist. LEXIS 125001, at *3-4 (W.D. Va. July 25, 2018). As a result, *Morgan* is inapposite because it applies to a plainly different subsection of the TCPA. That is, *Morgan* dealt with claims under 47 U.S.C. § 227 (b)(1)(B), which applies only to certain types of telephone calls delivered to "residential telephone line[s]", while Plaintiff brings claims under § 227(c)(5), which applies to telemarketing messages delivered "residential telephone subscribers," which is inclusive of cellular telephones registered to the DNC Registry. *Compare supra* n.3 *with id.* Moreover, the *Morgan* court noted that the statutory language used in those subsections

differed, distinguishing those differing statutory schemes on that basis. *See id.* at *8 (distinguishing DNC Registry claims—as Plaintiff advances here—from "automatic dialing" claims, noting that "instead of using the 'residential telephone lines' language discussed above, it pointedly refers to 'residential telephone subscribers.'"). The same holds true for *Cunningham v. Carribean Cruise Lines, Inc.*, which involved claims brought under 47 U.S.C. § 227(b)(1)(B). No. 15-62580-CIV, 2016 U.S. Dist. LEXIS 179758, at *2 (S.D. Fla. Dec. 28, 2016). Thus, *Morgan* and *Cunningham* are simply not relevant here, as they involved different claims, premised on different definitions, which the *Morgan* court expressly acknowledged, while Defendant elected instead to omit this critical distinction. *Accord Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 348 (1st Cir. 2022) (concluding that it would not be "an abuse of discretion to find that cell phone users and landline users could be adequately represented by the same representatives and counsel" because the defendant's "argument that cell phone users are not 'residential telephone subscribers' runs headlong into the FCC's express statements to the contrary").

Lastly, Defendant relies heavily upon *Mantha v. QuoteWizard.com, LLC*, which found, *after discovery and pursuant to a motion for summary judgment*, that the plaintiff was entitled to summary judgment on whether his cellular telephone number qualified as a residential telephone number. No. 19-12235-LTS, 2022 U.S. Dist. LEXIS 19502, at *23 (D. Mass. Feb. 3, 2022). Defendant, again, omits this critical procedural distinction. Moreover, in *Mantha*, the court found, after the parties completed extensive discovery on the issue, that the plaintiff used his cellular telephone number for both personal and business uses, and discussed a "totality of circumstances" test to determine if the plaintiff's use of his cellular telephone number qualified for DNC Registry protections, including whether the plaintiff uses their cellular telephone number for a "residential purpose," and if the plaintiff subscribed for the phone number in their individual name (such as

listing their residence on the cellular telephone plan), and that if those conditions were then met, the court would consider whether the cellular number is the primary means of reaching the plaintiff at their residence. *Id.* at *13. And, after considering that the plaintiff used their cellular telephone number for both business and residential purposes, the court nevertheless granted summary judgment in the plaintiff's favor, noting that "[the plaintiff] also uses his cellular phone number to receive calls regarding his employment during the workday as well as outside of normal business hours does not eradicate the residential use and qualities of his cellular phone as QuoteWizard appears to contend." *Id.* at *15-16.

In the face of this summary judgment decision, and despite the FCC guidance dictating that the Court should presume that Plaintiff's cellular telephone is residential, Defendant instead advances *Mantha* to impose a heightened standard that it fabricates out of whole cloth: Defendant suggests that Plaintiff must allege that his cellular telephone number is "the primary means of reaching him at his residence," and allege additional facts corroborating Defendant's unilaterally-imposed standard. ECF No. 6-1 at 8. This is flatly incorrect, and Defendant cites zero applicable authority supporting its position. However, other courts have rejected such a requirement, as the court did in *Myrick v. Adapthealth, LLC*:

> Indeed, Plaintiff's allegations regarding his cellular phone qualifying him as a residential telephone subscriber distinguish this case from the line of *Cunningham* cases cited by Defendants. As to the sufficiency of Plaintiff's allegations regarding the "residential" nature of his cellular phone subscription, the court is unaware of, and Defendants do not proffer, any facts that must be alleged to qualify a cellular phone under the residential telephone subscriber provision of § 227(c). The court will not, at present, create a judicial test regarding what must be alleged to give meaning to the term "residential," as the question presented by Defendant's motion is merely whether §227(c) can apply to cellular telephone subscribers. As discussed, the court is unaware of any precedent that would foreclose such a claim and Plaintiff's allegations regarding residential telephone subscription are sufficient.

No. 6:22-CV-00484-JDK, 2023 U.S. Dist. LEXIS 120588, at *8-9 (E.D. Tex. June 26, 2023).

19

As the court in *Katz v. CHW Grp., Inc.* recently noted in rejecting a materially identical argument:

> CHW contends that for a person to be a "residential telephone subscriber" within the meaning of these regulations, the number in question must be "actually used for residential purposes," and must be "the primary means of reaching the individual at their residence—that is, there is no other landline or phone at their residence which is instead the primary means of reaching them." Mr. Katz, by contrast, advocates for a more expansive definition, which is that a "residential telephone subscriber" is a "subscriber to a telephone exchange service that is not a business subscriber." Apparently the Eighth Circuit has never addressed this issue; and each party cites a smattering of unpublished district court cases from around the country in support of its preferred definition.
>
> The Court favors Mr. Katz's preferred construction, for reasons both textual and purposive. First, with respect to the text, the Court finds nothing in the language of the organic statute or the implementing regulations to support the *Mantha* court's "primary means of reaching the individual at their residence" test. Indeed, quite the opposite: the regulations at issue here explicitly extend their protection not only to "residential telephone subscribers" but also to "wireless telephone numbers." *See* 47 C.F.R. § 64.1200(e). On this point, the Court agrees with no less an authority than the Federal Communications Commission ("FCC") itself, which is the agency tasked with promulgating and enforcing these regulations.
>
> Second, although the TCPA and its implementing regulations do not define "residential telephone subscriber," the FCC has provided a definition for that term in a different, but not distant, Subpart of the federal regulatory code—and that definition is Mr. Katz's preferred one: "a subscriber to telephone exchange service that is not a business subscriber." 47 C.F.R. § 64.2305(d). Here, the Court would apply the canon of construction that identical language in related statutes or regulations presumptively carries a consistent meaning.
>
> Third, another longstanding canon of construction instructs that to whatever extent remedial statutes are vague or ambiguous, they generally should be liberally construed in favor of the parties they were designed to protect. "The TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls. Because the TCPA is a remedial statute, it should be construed to benefit consumers." Arbitrarily importing a requirement that a number be the primary means of reaching an individual at their residence would not comport with this canon.

*Katz v. CHW Grp., Inc.*, No. 5:22-cv-5198, 2023 U.S. Dist. LEXIS 176206, at *14-16 (W.D. Ark. Sep. 29, 2023).

*Were that not enough*, the Court should also examine the context of Plaintiff's allegations. Specifically, Plaintiff alleges that he received a series of text messages from Defendant seeking to offer real estate-related services to Plaintiff, as either a buyer's or seller's agent. ECF No. 1 at ¶¶ 14, 21. Thus, in addition to Plaintiff's statement that he uses his cellular telephone number as a personal residential telephone number, Defendant also believed that his cellular telephone number was his residential telephone number when it cold-called Plaintiff *to offer services to sell or buy his residence*. *See generally id.* Thus, even if the Court disavowed the FCC's presumption in favor of Plaintiff, and even if the Court failed to accept Plaintiff's allegations as true—which it must at this juncture—Defendant's conduct and communications suggest that it too believes that it contacted Plaintiff at a residential telephone number.

Thus, for all of these reasons, the Court should deny Defendant's motion to dismiss in its entirety.

## III.    If this Court finds any of Plaintiff's allegations lacking, it should allow leave to amend.

Should this Court find any of Plaintiff's allegations lacking—it should not—this Court should allow Plaintiff leave to file an amended class action complaint. *See* Fed. R. Civ. P. 15(a)(2). If permitted leave to do so, Plaintiff will add additional allegations supporting his statement that he used his cellular telephone number as a residential telephone number, and that Defendant lacked appropriate procedures or policies to avoid violations of the TCPA.

### Conclusion

For all of the reasons discussed herein, Plaintiff respectfully requests that this Court deny Defendant's motion to dismiss in its entirety. Alternatively, Plaintiff requests leave to file an amended class action complaint.

Date: November 28, 2023                    */s/ Christopher M. Lefebvre*
                                           Christopher M. Lefebvre, Esq.

**THE CONSUMER AND FAMILY LAW CENTER OF CLAUDE F. LEFEBVRE & CHRISTOPHER M. LEFEBVRE, P.C.**
2 Dexter Street
Pawtucket, RI 02860
Tele: 401-728-6060
Chris@lefebvrelaw.com

Alex D. Kruzyk (*pro hac vice*)
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
501 Congress Avenue, Suite 150
Austin, Texas 78701
Tele: (561) 726-8444
akruzyk@pkglegal.com

*Counsel for Plaintiff and the proposed classes*